**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

HAROLD CLEVELAND GRAY,

      Petitioner,

-vs-                                    Case No.  8:04-CV-699-T-30MAP

JAMES V. CROSBY, JR.,

      Respondent.

_____/

## <u>ORDER</u>

      Petitioner, a State of Florida inmate, initiated this action *pro se* by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1).  Petitioner is challenging convictions entered in 2001 by the Sixth Judicial Circuit Court, Pinellas County, Florida. Respondent has filed a response to the petition (Dkt. 6), and Petitioner has filed a reply thereto (Dkt. 9).  The matter is now before the Court for consideration on the merits of the petition.

## Background

      On April 7, 2000, Petitioner was charged by amended information with robbery (Count One), two counts of burglary of an conveyance with a battery (Counts Two and Three), burglary of an occupied dwelling with a weapon (Count Four), grand theft motor vehicle  (Count Five), and possession of cocaine (Count Six) (Dkt. 6, Ex. A). The charges

were severed, and Petitioner, represented by counsel, proceeded to a trial by jury on Counts One, Two, Three, and Five on May 17, 2001 (Dkt. 6, Ex. B).

Petitioner was found guilty on Counts One, Two, and Three, and not guilty on Count Five, which was labeled as Count Four for the trial (Dkt. 6, Ex. F). Petitioner was sentenced on May 19, 2001, to concurrent terms of 30 years as an habitual felony offender, with a 15-year minimum mandatory term as a prison releasee reoffender, on Count One, life imprisonment as an habitual felony offender on Count Two, and 10 years as an habitual felony offender on Count Three (Dkt. 6, Ex. G).

Court-appointed counsel filed an appellate brief on Petitioner's behalf on May 28, 2002, asserting that he could not be convicted of both burglary with a battery and robbery because the force used to commit the robbery was the same force used to prove the burglary with a battery (Dkt. 6, Ex. I at 7).  On November 22, 2002, the state district court affirmed Petitioner's convictions and sentences *per curiam*, without written opinion (Dkt. 6, Ex. L). *See Gray v. State*, 835 So. 2d 1124 (Fla. 2d DCA 2002) (table decision). The mandate issued on December 26, 2002 (Dkt. 6, Ex. M).

On January 21, 2003, Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Crim. P. 3.850 alleging that: (1) the state trial court erred in denying his motion to suppress based on an allegedly illegal arrest in an unrelated case;[1] (2) the

---

[1]Reports received during the investigation of a burglary at the Driftwood Motel led Officer Robert Glidden to the residence of Petitioner's mother.  At the same time, Detective Krause was investigating the charges that resulted in the convictions challenged in Petitioner's § 2254 petition. Petitioner made certain statements to Officer Glidden post-*Miranda* which related to the Driftwood burglary.

In the interim, information Detective Krause gathered from sources independent of Officer Glidden's investigation led him to conclude that an individual known as "Harold Gray" was a suspect in the robbery and burglaries he was investigating involving victims Lisa Haven and Jane Weissman. Detective Krause did not know that Officer Glidden was conducting an investigation of the Driftwood burglary or that Petitioner was a suspect in Officer's Glidden's case. The shirt Petitioner was wearing when Officer Glidden arrested him and
(continued...)

investigating officer's testimony regarding the photo array was inadmissible hearsay; and (3) the identification procedure was unduly suggestive (Dkt. 6, Ex. N). The state trial court denied Petitioner's motion on February 6, 2003, finding that the issues he raised were procedurally barred because they could or should have been raised on direct appeal (Dkt. 6, Ex. O).[2] On May 28, 2003, the state district court affirmed the state trial court's decision (Dkt. 6, Ex. P). *See Gray v. State*, 855 So. 2d 85 (Fla. 2d DCA 2003) (table decision).

Petitioner filed a petition for state habeas relief on June 24, 2003, alleging that appellate counsel was ineffective in failing to raise the issues presented in the statement of judicial acts to be reviewed and in failing to raise a hearsay issue (Dkt. 6, Ex. Q). The state district court denied the petition on January 14, 2004 (Dkt. 6, Ex. T). *See Gray v. State*, 869 So. 2d 551 (Fla. 2d DCA 2004) (table decision).

---

[1](...continued)
a blue jacket given to Officer Glidden by Petitioner's mother at the time of the arrest were used as evidence in the Haven/Weissman case.

After hearing testimony from Officer Glidden, Detective Krause, Petitioner, and his mother, the state trial court rejected the motion to suppress, concluding that Petitioner's arrest in the Driftwood burglary did not taint the evidence in the instant case because it fell within the inevitable discovery exception to the exclusionary rule.

[2]In his reply, Petitioner asserts that the state trial court failed to address his sufficiency of the evidence claim. Ground Three of Petitioner's Rule 3.850 motion was captioned "Unduly suggestive identification. Verdict is contrary to substantial weight of the evidence" (Dkt. 6, Ex. N (unnumbered)). In its order denying the Rule 3.850 motion, the state trial court stated that "after reviewing the motion, the court file, and applicable law, this Court finds . . . [t]hese are all claims that should have been raised on direct appeal" (Dkt. 6, Ex. O). While the state trial court did not state that it was addressing Petitioner's "sufficiency of the evidence" claim in its order of denial, it specifically referred to Ground Three of his Rule 3.850 motion, rejecting Petitioner's Rule 3.850 motion *in toto*. With no evidence to the contrary, the Court concludes that the state trial court denied Petitioner's sufficiency of the evidence claim without explication in its order rejecting his Rule 3.850 motion. *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002) ("The statutory language [of § 2254(d)] focuses on the result, not on the reasoning that led to the result, and nothing in that language requires the state court adjudication that has resulted in a decision to be accompanied by an opinion that explains the state court's rationale" (citation omitted)); *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) (rejecting habeas petitioner's argument that the failure of the court to discuss the issues specifically is indicative of a failure to conduct the appropriate review of his claims, the circuit court held that "the Court will 'assume that the district court did its statutorily commanded duty in the absence of evidence to the contrary'" (citation omitted)).

Petitioner filed his petition for federal habeas relief on April 1, 2004. He presents four grounds for relief:  (1) double jeopardy principles preclude conviction of both robbery and burglary with a battery when the same force is used to commit both offenses; (2) the state trial court erred in denying his motion to suppress evidence discovered as the result of an unlawful arrest in an unrelated case; (3) the admission of testimony by Detective Krause regarding his contacts with Ebony Johnson violated his right to confront witnesses against him;[3] and (4) the verdict was contrary to the weight of the evidence because the identification process was tainted by the use of an unduly suggestive photopack. Acknowledging that the petition is timely, Respondent contends that the claims asserted therein fail to meet the criteria for relief under § 2254(d) and (e).  For reasons discussed below, the Court agrees.

### Standard of Review

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fagged v. Head*, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that

---

[3]While Petitioner labels this claim as a hearsay issue, he is, in essence, asserting a violation of the Sixth Amendment's Confrontation Clause. Detective Krause interviewed Ebony Jackson after she was identified as the person using Lisa Haven's credit cards at the Tyrone Square Mall on October 27, 1999. Petitioner does not complain that Detective Krause's testimony regarding his contact with Ms. Jackson was hearsay. To the contrary, Petitioner acknowledges that Detective Krause "never testified to the exact statements made to him" by Ms. Jackson (Dkt. 9 at 5). Petitioner contends that Detective Krause's testimony regarding the progress of the investigation raised a "logical inference . . . that [Ms. Jackson] had given information to [Detective Krause] that led him to believe that Petitioner was guilty" (Dkt. 9 at 5). Despite having been subpoenaed as a witness by the State, Ms. Jackson failed to appear during the trial. Petitioner asserts that because Ms. Jackson was unavailable to testify, Detective Krause's testimony regarding his contact with her violated his right to confront and cross-examine witnesses against him.

state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state-court decisions be given the benefit of the doubt).

Pursuant to 28 U.S.C. § 2254(a) "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. at 792; *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002). Where no Supreme Court precedent is on point, or the precedent is ambiguous, it cannot be said that

the state court's conclusion is contrary to clearly established federal law. *Mitchell v. Esparaza*, 540 U.S. 12, 17 (2003). "[A] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions. . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Id.* at 16 (quoting *Early v. Packer,* 537 U.S. 3, 7-8 (2002)). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (citation omitted). A state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

### Discussion

Petitioner's assertion in Ground One that his conviction for both the robbery and the burglary of a conveyance with a battery violates the double jeopardy clause relates to the October 27, 2001attack on Lisa Haven. The essence of Petitioner's constitutional argument is  that the force used to commit both offenses was the same.  This claim was raised and rejected on direct appeal.  Petitioner's contentions that the state trial court erred in denying his motion to suppress (Ground Two), the admission of Detective Krause's testimony regarding Ebony Johnson violated his right to confront witnesses against him (Ground Three), and the verdict was contrary to the weight of the evidence because the identification process was tainted by the use of an unduly suggestive photopack (Ground Four) were raised and rejected in Petitioner's Rule 3.850 proceedings.

**Ground One**

In Ground One, Petitioner asserts that his convictions for robbery and burglary with a battery violate the principles of double jeopardy because the force used in both offenses was the same. According to testimony adduced by the State, on October 27, 1999,  Ms. Haven stopped at a Mobil gas station in St. Petersburg, Florida, to buy cigarettes. Ms. Haven's first encounter with Petitioner occurred as she was leaving the gas station after making her purchase. Ms. Haven was sitting inside her van with the door open when Petitioner approached her and asked for directions to Tampa.

After Ms. Haven stepped out of her van and began giving him directions, Petitioner "punched" her in the jaw and shoved her back into the van. When Petitioner crawled over Ms. Haven and grabbed her purse from the passenger seat, a struggle ensued. Petitioner succeeded in wrenching the purse from Ms. Haven's hands and exited her vehicle, taking the purse with him as he ran toward a white van. With Ms. Haven in pursuit, Petitioner entered the driver's side of the white van and sped away.

During the trial, Ms. Haven identified Petitioner as the person who attacked her. Petitioner was convicted of both robbery and burglary of a conveyance with a battery.

Responding to Petitioner's double jeopardy argument, Respondent contends that Petitioner's convictions satisfy the rule established in *Blockburger v. United States*, 284 U.S. 299 (1932), for determining whether offenses are "separate" for purposes of multiple punishments, codified by the Florida legislature in Fla. Stat. § 775.021(4) (2000).[4] The test

---

[4] In enacting this statute, the Florida legislature expressed its intent that there be a separate conviction and sentence for each criminal offense involved in a single transaction unless the offenses fall within one of the stated exceptions:

(continued...)

for compliance with the double jeopardy clause is "whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.

Here, Petitioner's offenses of robbery and burglary of a conveyance with a battery require proof of different elements. Burglary of a conveyance with a battery or assault requires the entering or remaining in a conveyance with the intent to commit an offense therein. *See* Fla. Stat. § 810.02(1) (2000). None of these elements are required for the robbery offense. Robbery, on the other hand, includes a taking, which is not required under burglary. *See* Fla. Stat. § 812.13(1) (2000). Although there is a force or assault element in each crime, the other elements of each offense are distinctively different. Therefore, the offenses are not identical and one offense is not subsumed by the other offense. *See McAllister v. State*, 718 So. 2d 917 (Fla. 5th DCA 1998). Likewise, since theft would be the core offense of robbery, as robbery is basically a violent theft, and the core offense of burglary is trespass, robbery and burglary are not degrees of the same substantive crime.

---

[4](...continued)
(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

   1. Offenses which require identical elements of proof.
   2. Offenses which are degrees of the same offense as provided by statute.
   3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. §775.021(4) (2000).

Theft and trespass, even if they involve the same occurrence, are separate crimes addressing separate evils. *See State v. Stephens*, 601 So.2d 1195, 1197 (Fla. 1992).

The Court finds that Petitioner has failed to establish that the state district court's adjudication of this claim is contrary to, or an unreasonable application of, clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  Thus, this claim lacks merit.

**Grounds Two, Three, and Four**

As stated above, Grounds Two, Three, and Four of the petition challenging, respectively, the state trial court's denial of Petitioner's motion to suppress, the admission of Detective Krause's testimony regarding Ebony Johnson, and the out-of-court identification  were raised by Petitioner in his Rule 3.850 motion. The state trial court rejected the claims, finding that they were procedurally barred because they could or should have been raised on direct appeal.

Under Florida law, issues which either were or could have been litigated at trial and on direct appeal are not cognizable in a motion for post-conviction relief.  *See* Fla. R. Crim. P. 3.850 ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."); *Harvey v. Dugger*, 656 So.2d 1253, 1256 (Fla. 1995). It is a state's prerogative to fix the contours of its procedural rules, and this circuit has long recognized this aspect of Florida law. *Sullivan v. Wainwright*, 695 F.2d 1306, 1310 (11th Cir.), *cert. denied*, 464 U.S. 922 (1983) (claims that could have been or should have been reserved at trial and then raised on direct appeal and were not are procedurally barred).

Therefore, unless Petitioner can show either cause and prejudice or that the actual innocence exception to the cause and prejudice requirement applies to these claims, they are procedurally defaulted in this Court. *See, e.g.,Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes). Cause must ordinarily be something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show prejudice, Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

As cause for his procedural default, Petitioner contends that these claims were not raised on appeal due to the ineffectiveness of appellate counsel.[5] While ineffective assistance of counsel may satisfy the cause requirement, *see Murray v. Carrier*, 477 U.S. 478, 485 (1986), "attorney error short of ineffective assistance of counsel, . . . does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Thus, to satisfy the cause exception to the procedural bar, Petitioner's "claim of ineffective assistance must have merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citing *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989)). Having been raised and rejected in an application for state habeas relief,

---

[5]Notably, Petitioner did not raise an ineffective assistance of appellate counsel claim in his § 2254 petition, and he has not sought leave to amend the petition.

Petitioner's claims of ineffective assistance of appellate counsel are properly exhausted.[6]

*See Gray v. State*, 869 So. 2d 551 (Fla. 2d DCA 2004) (table decision).

Generally, to establish a prima facie claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Eleventh Circuit has held that "[w]hen applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998).

The *Strickland* standard of review also applies to ineffective assistance of appellate counsel claims. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). In *Jones v. Barnes*, 463 U.S. 745 (1983), the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue.

In the instant case, when court-appointed counsel filed the appellate brief on May 28, 2002, he raised only one issue: whether Petitioner's conviction for robbery and burglary with a battery violated the double jeopardy clause (Dkt. 6, Ex. I). Petitioner's assertion that appellate counsel was ineffective for failing to challenge the state trial court's denial of his motion to suppress (Ground Two) and the admission of Detective Krause's testimony

---

[6]*See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (ineffective assistance of counsel claim asserted as cause for procedural default of another federal claim could itself be procedurally defaulted).

regarding Ebony Johnson (Ground Three) do not rise to the level of ineffectiveness under

*Strickland*, as demonstrated by the letter Petitioner received from appellate counsel stating

as follows:

> This is in response to your letter of June 4.  I did not raise the issues you suggest because they have no merits.
>
> As to the suppression issue, the trial court believed the officer's testimony and thus there are no grounds to argue that your arrest was illegal. The officer testified your mother consented to his entry. The appellate court cannot overrule a trial court's determinations of fact.  There is no issue I can raise here.
>
> As to the Ebony Jackson issue.  Krause did not testify before the jury about any statements she made to him.  He testified that he talked to her, then went to the motel.  He testified that your arrest was not based on "[any]thing that Ms. Jackson told [him]" He did not testify "that he learned who [you were] through [her]." There is no hearsay problem here.  There is no issue here.
>
> As to Glidden's testimony that he "arrested [you] on other charges."  No such testimony was presented to the jury.  He simply said he went to the motel, met you then took you to the police station; he did not even testify that he arrested you for these charges.  There is no issue here.
>
> Sorry I can't be more encouraging.

Dkt. 9, Attach. (unnumbered), Letter from Richard J. Sanders, Assistant Public Defender,

to Harold Gray (June 18, 2002).

The letter demonstrates that Petitioner and appellate counsel corresponded

regarding the issues which could be raised on appeal.  Having reviewed the record,

appellate counsel decided not to assert that the state trial court erred in denying the motion

to suppress or challenge Detective Krause's testimony regarding his contact with Ebony

Jones during the investigation because he was convinced the issues lacked merit.

As the Supreme Court held in *Jones v. Barnes*, appellate counsel is not ineffective

for failing to raise claims on appeal that lack merit or for separating the stronger issues from

the weaker in order to keep the appellate court's attention focused. 463 U.S. at 751-52.

Declining to "promulgate[ ] a *per se* rule that the client, not the professional advocate, must

be allowed to decide what issues are to be pressed," the *Jones* court held that there is no

constitutional right to compel appointed counsel to press nonfrivolous points requested by

the client "if counsel, as a matter of professional judgment, decides not to present those

points." *Id.* at 751. The Court finds that appellate counsel's decision not to raise the issues

Petitioner advocates in Grounds Two and Three of his petition was consistent with

reasonable appellate strategy that, under the deferential standard of review articulated in

*Strickland*, should not be second-guessed. *Strickland*, 466 U.S. at 689.

   As to Petitioner's contention in Ground Four that appellate counsel was ineffective

for failing to assert that there is insufficient evidence to support the verdict because the out-

of-court identifications were tainted by the use of an unduly suggestive photopack lineup,

Petitioner argues, *inter alia*, that discrepancies in the descriptions of the robber given by

the victims when the police arrived at the scene call into question the reliability of the jury's

verdict. Specifically, according to the police report, Ms. Haven described the robber "as

being a black male, 30-34 years of age, approx. 5'9", 150 lbs.  He had a beard and a

mustache and was wearing a black cap, blue maroon and white striped shirt, and black

jeans" (Dkt. 9, Attach. (unnumbered), St. Petersburg Police Department Report, Case No.

99-058193).  Ms. Weissman, on the other hand, reported that the robber was a black male

in his fifties, 6 feet tall, weighing 175 pounds, "with grey hair and beard" (Dkt. 9, Attach.

(unnumbered), St. Petersburg Police Department Report, Case No. 99-058004). This

assertion does not constitute a viable basis for habeas relief.

Each victim unequivocally identified Petitioner as the robber during the trial. Trial counsel vigorously cross-examined each victim, pointing out minor discrepancies in Petitioner's appearance when he was arrested and the description given to the investigating officer at the scene. As the Supreme Court has held, absent "a very substantial likelihood of irreparable misidentification, . . . [identification] evidence is for the jury to weigh." *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)).   As discussed below, Petitioner has not established a likelihood of irreparable misidentification, substantial or otherwise.

While there is no constitutional right to a lineup, *see United States v. McGhee*, 488 F.2d 781, 786 (5th Cir.), *cert denied*, 417 U.S. 971 (1974), an unnecessarily suggestive confrontation may create such a likelihood of misidentification that the defendant's right to due process is violated, *see Neil v. Biggers*, 409 U.S. 188, 198 (1972). Reliability is the major factor in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. at 114.

A two-step analysis is applied in this circuit to determine whether identifications are so unreliable as to violate due process. *See Johnson v. Dugger*, 817 F. 2d 726 (11th Cir. 1987), *cert. denied*, 485 U.S. (1988). First, the original identification procedure must be examined to determine whether it was unduly suggestive. If it was not, the inquiry is ended. If it was, then it must be determined whether the suggestive procedure, given the totality of the circumstances, created a substantial risk of irreparable misidentification. *Williams v. Weldon*, 826 F.2d 1018, 1021 (11th Cir. 1987), *cert. denied*, 485 U.S. 964 (1988). The factors when considering the "totality of the circumstances" include the opportunity to view, the degree of attention, the accuracy of the description, the level of certainty, and the length

of time elapsing between the crime and the identification. *See Neil v. Biggers*, 409 U.S. at 199-200. *See also Manson v. Brathwaite*, 432 U.S. at 114; *Blanco v. Singletary*, 943 F.2d 1477, 1507 (11th Cir. 1991).

In the present case, Petitioner's assertion that his convictions should be set aside because the out-of-court identification was tainted by an unduly suggestive photopack lineup lacks merit. As discussed above, within minutes of the robbery, Ms. Haven gave the officer who responded to the 911 call a description of the robber. When questioned about the October 27, 1999 robbery, Ms. Haven testified that she looked Petitioner in the face and spoke to him as she exited the gas station. According to Ms. Haven, the area where the robbery occurred was very well lit, and her view of the robber was unobstructed. Before the attack, she had been standing face to face with the robber for approximately one minute as she gave him directions to Tampa. Ms. Haven further testified that at the time of the robbery, the robber was wearing "a very distinctive striped shirt." Ms. Haven identified the shirt that Petitioner was wearing when he was arrested as the shirt the robber was wearing when the robbery occurred.

The gas station's video surveillance tape was not immediately available, but when it was retrieved from the manager, Ms. Haven viewed the surveillance tape and identified the robber. The day after the robbery occurred, Ms. Haven identified Petitioner as the robber after viewing his picture in a photopack shown to her by Detective Krause. During the trial, Ms. Haven positively identified Petitioner as the man who robbed her. She then viewed the video surveillance tape again and identified the man who entered the gas station as she exited as the robber.

Victim Jayne Weissman testified that the October 26, 1999 robbery occurred on a sunny morning with no visibility problems. She further testified that she was looking at her assailant's face as he repeatedly asked her for a quarter before commencing to attack her. Shortly after the police arrived at the scene, Ms. Weissman gave a description of the robber to the investigating officer.  She then viewed the gas station's video surveillance tape and identified the robber. Officer Tonia Nave's testimony confirmed that Ms. Weissman identified her assailant on the gas station's surveillance tape shortly after the robbery occurred. During the trial, Ms. Weissman positively identified Petitioner as the man who robbed her. She also pointed out the robber on the video surveillance tape of the gas station on the morning of the robbery. Ms. Weissman testified that she had also identified Petitioner as the robber after viewing his picture in a photopack shown to her by Detective Krause.

Nadine Porter, the assistant manager on duty at the gas station the morning Ms. Weissman was robbed, testified that she had known Petitioner as someone "from the neighborhood" for more than 25 years. Ms. Porter testified that Petitioner was in the gas station shortly before Ms. Weissman was robbed. Ms. Porter admitted that she initially gave the investigating officer false information to avoid identifying Petitioner because she did not want to be called to testify (Dkt. 6, Ex. E at Tr. 59). Ms. Porter further testified, however, that she felt no animosity towards Petitioner because the State subpoenaed her. During her testimony, Ms. Porter, like Ms. Weissman, identified the robber on the gas station's video surveillance tape.

The video surveillance tapes of both incidents and the photopack used by Detective Krause during the out-of-court identifications were entered as evidence and made available to the jury.

Petitioner does not present any argument that he was positively identified by the victims for any reason other than the fact that they recognized him at the crime scene. *See e.g., Meeks v. Moore*, 216 F.3d 951, 968 (11th Cir. 2000) ("There is no reasonable argument that Meeks was positively identified . . . for any reason other than the fact that the[] [witnesses] saw Meeks at the scene of his murders. Any motion to suppress the identifications on grounds of suggestiveness would have been denied. . . .'[B]ecause counsel has no duty to bring forth non-meritorious motions, Meeks cannot meet either prong of the *Strickland* test based on the line-up.'").

Given the testimony at trial, even if, *in arguendo,* the photopack viewed by the victims when they made their respective out-of-court identification were unduly suggestive, the in-court identification would be admissible in both federal and Florida courts. *See Neil v. Biggers*, 409 U.S. at 199-200*; State v. Gonzalez*, 713 So.2d 1065 (Fla. 2d DCA 1998).

Out of an abundance of caution, the Court has examined the photopack in light of Petitioner's complaint that the pictures were "arranged so as to point to [Petitioner] by placing him in line with other persons whose physical description manifestly did not fit those the witnesses had given," *see* Dkt. 1, Attach. at 9, and finds that the photopack is not unduly suggestive. The six black males depicted in the photopack, all of comparable size and age, are in informal pose and clothing. Each of the photographs presents a frontal view of the subject's head and shoulders. Their hair styles are generally alike, and all of the men appear to have hair similar in color. Each man has a prominent mustache. Although

Petitioner appears to have less well-groomed hair than the other five individuals depicted in the photo array, the variation does not render the array unduly suggestive. Since Detective Krause used black and white photographs in the photopack, *see* Dkt. 6, Ex. E at Tr. 126, the fact that Petitioner is wearing "jail clothing" is likewise unremarkable.

Petitioner does not overcome the strong presumption that appellate counsel exercised reasonable professional judgment in not challenging the sufficiency of the evidence on grounds that the out-of-court identification was tainted by an unduly suggestive photopack. The Court finds that a reasonably competent attorney under the circumstances could conclude that it would have been futile to challenge Petitioner's conviction on grounds that the out-of-court identification was unduly suggestive where both victims, each of whom had a  sufficient opportunity to observe Petitioner at the scene and could demonstrate independent recall of him, identified him as the robber without equivocation during the trial. Thus, Petitioner's claim that appellate counsel was ineffective for failing to raise Ground Four on appeal lacks merit.

Petitioner offers no other reason for his failure to raise these claims on appeal, and the Court discerns none that would amount to good cause to overcome a state procedural default. Having failed to show that any factors external to the defense prevented the presentation of these claims on appeal, Petitioner has not shown cause to excuse the default. *See Murray v. Carrier*, 477 U.S. 478 (1986); *Wainwright v. Sykes*, 433 U.S. 72 (1977).

An exception to the "cause-and-prejudice" requirement was recognized in Sykes when the Court stated that the standard developed there would not bar habeas relief for a victim of a "miscarriage of justice," often referred to as the "actual innocence" exception.

*Id.* at 90. A petitioner in a collateral proceeding who wishes to establish his actual innocence to avoid a procedural bar to consideration of the merits of his underlying claim must "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quotations omitted); *see also Schulp v. Delo*, 513 U.S. 298, 316 (1995). In this context, a petitioner must demonstrate that he has newly discovered evidence that if presented at trial would establish factual innocence rather than mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

Petitioner's conclusory statement that "if the [C]ourt allow[s] this judgment and conviction to stand it would definitely be [a] fundamental miscarriage of justice" (Dkt. 9 at 9), standing alone, is not sufficient to warrant finding that he is entitled to proceed despite the procedural bar to his claim. Petitioner does not present any evidence of "factual" innocence that was not available at trial. Without such a showing, Petitioner cannot demonstrate a colorable claim of actual innocence. *Id.*

Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of the claims raised in Grounds Two, Three, and Four. *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995) (federal habeas courts may not reach the merits of "*procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims.") (quoting *Sawyer v. Whitley*, 505 U.S. at 339 (1992) (emphasis in original)).

## Conclusion

For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is entitled to federal habeas relief. No evidentiary hearing is necessary since the record is fully developed and the Petitioner's claims raise issues of law rather than issues of fact. *See Breedlove v. Moore*, 279 F.3d 952, 959 (11th Cir. 2002).

ACCORDINGLY, the Court **ORDERS** that:

1.   The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2.   The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on May 10, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copy furnished to:
All Parties of Record

SA:jsh